

**Jakob B. Halpern**
**(973) 622-8394**
**jhalpern@saiber.com**

January 9, 2023

**BY ECF**

Honorable Jessica S. Allen, U.S.M.J.
United States District Court for the District of New Jersey
Martin Luther King Jr. Bldg. & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07102

  Re: ***Mylan Pharms. Inc. v. Teva Pharms. Indus. Ltd., et al.*,**
     **Civil Action No. 2:21-13087 (JXN) (JSA) ("Mylan Action")**

     ***In re: Copaxone Antitrust Litig.*,**
     **Civil Action No. 2:22-1232 (JXN) (JSA) ("Copaxone Class Action")**

Dear Judge Allen:

  Our firm, along with Wilson Sonsini Goodrich & Rosati, represents Plaintiff Mylan Pharmaceuticals Inc. in the Mylan Action. Mylan Pharmaceuticals Inc. ("Plaintiff"), Direct Purchaser Class Plaintiffs and Third-Party Payor Class Plaintiffs (collectively "Class Plaintiffs"), and Teva Pharmaceuticals Industries Ltd., Teva Pharmaceuticals, Inc., Teva Neuroscience, Inc., and Teva Sales & Marketing ("Defendants" or "Teva") collectively ("the Parties"), submit this joint status letter in accordance with the Court's November 21, 2022 Text Order. ECF No. 105.

  **1. Phase 1 Productions Completed**

Plaintiffs' Position

  It is Mylan's position that both Mylan and Teva have completed their Phase 1 productions. Mylan is considering Teva's request for two additional documents. It is Mylan and Class Plaintiffs' position that Phase 2 discovery should proceed for the reasons previously addressed to the Court.

Teva's Position

  Following the November 4, 2022 status conference, Teva completed its Phase 1 production, including the production of materials subject to third-party confidentiality obligations. In total,

Honorable Jessica S. Allen, U.S.M.J.
January 9, 2023
Page 2

Teva produced 294,284 documents and 936,493 pages to the Plaintiffs in these coordinated actions.

Teva has identified two documents that it believes are missing from Mylan's Phase 1 production and has requested that Mylan produce them. Teva otherwise believes Mylan's Phase 1 production is complete.

It is Teva's position that the Court has repeatedly considered and rejected Mylan's request to begin Phase 2 discovery, and since denying Mylan's requests, nothing has changed to warrant revisiting that decision.

**2.     Custodians**

Teva and Mylan continue to negotiate custodians for Phase 2 discovery, and while these negotiations have not yet reached an impasse, Mylan and Teva provide this report to keep the Court apprised of the current status of discussions.

Mylan's Position

Teva has continued to adhere to its position that dozens of individuals who were custodians in the prior related investigations need not be custodians here. As background, and as the Court will recall, Teva has identified 108 individuals and entities who were custodians in the prior investigations. Here, Teva has only proposed 17 custodians. Mylan's position is that there should be a presumption of relevance for the 45 individuals who served as custodians in two of three investigations that resulted in the Phase 1 corpus of documents. There can be no serious question as to the relevance of these custodians, and indeed, that Teva selected them as custodians for two of the three investigations suggests a relevance determination by Teva. Teva's current proposal appears designed to circumscribe improperly the full scope of discovery here.

Further, while it is true that Mylan has received some materials from these 45 custodians through Teva's Phase 1 productions, that does not imply that the materials produced as part of those investigations encompass the entirety of materials relevant to the claims here and responsive to Mylan's forthcoming requests for production. For example, there could be materials that were entirely withheld from the investigations, or that were not captured by the prior search terms and review process employed, or that Teva improperly withheld from its cross-production. In any event, Mylan's claims go well-beyond the scope of any of the three investigations from which Teva has reproduced materials, necessitating additional discovery from these indisputably relevant custodians. Finally, Teva's concerns regarding burden are unavailing, as regularly employed technological measures such as deduplication would minimize any burden and enable the efficient review and production of materials not captured by Teva's prior productions.

The Parties also continue to discuss the appropriateness of certain company executives being designated as custodians. Teva's existing productions make clear that many of Teva's senior

Honorable Jessica S. Allen, U.S.M.J.
January 9, 2023
Page 3

executives closely monitored Teva's Copaxone product and were involved in Teva's Copaxone related business and strategy. It is Mylan's position that many of these individuals possess unique and relevant materials for the Mylan Action, and should be custodians here.

Additionally, based on Mylan's ongoing review of Teva's Phase 1 productions, Mylan has identified a significant number of additional individuals with clearly substantive roles regarding Copaxone that have not been provided as custodians. Mylan's position is that these individuals possess relevant, unique materials and should be included as custodians. Mylan has raised this issue with Teva to discuss further.

Finally, Mylan continues to conduct diligence to potentially supplement its own list of custodians, by identifying individuals whose files are likely to hold specific categories of information or types of material as identified by Teva.

Teva and Mylan have not reached impasse on any of the aforementioned items, and Mylan remains willing to meet and confer on these issues.

Teva's Position

Teva and Mylan have continued their negotiations of proposed custodians. Since the November 4 status conference, Teva has carefully considered Mylan's request to include 45 additional Teva custodians who were also custodians in at least two of the matters in Teva's Phase 1 productions. Teva has agreed to include one additional custodian (bringing the total to 17 agreed Teva custodians).[1] However, Teva objects to including any additional custodians for several reasons. As an initial matter, Mylan has already received substantial materials from these additional proposed custodians as part of Phase 1 discovery, which includes the entirety of the production from Qui Tam action from January 1, 2008 forward and all of the materials Teva provided to the DOJ as part of its investigation. Teva has also already agreed to provide the ongoing productions in the related DOJ case in Phase 2 of discovery. Moreover, Mylan has made no showing as to why the custodians it proposes might have non-duplicative documents relevant to allegations other than the allegations in the Phase 1 matters that were already heavily litigated. The substantial burden and cost of collecting custodial data that is likely cumulative of the Phase 1 materials already provided and the custodial collections Teva has already agreed to undertake in Phase 2 outweighs any marginal benefit of adding these individuals as custodians and is not proportional to the needs of the case. In addition, the pending ruling on Teva's motions to dismiss may significantly narrow the issues in the case, and therefore, Mylan's request for such a broad expansion of the custodian list at this juncture does not make sense.

---

[1] In addition, Teva anticipates that its pending motions to dismiss will significantly narrow the cases, and Teva reserves the right to amend its list of agreed-upon custodians should a ruling on the pending motions to dismiss narrow the issues in these coordinated cases.

Honorable Jessica S. Allen, U.S.M.J.
January 9, 2023
Page 4

The Parties continue to negotiate the proper scope of custodial collections and, should the Parties reach an impasse on any issues, they will raise any disputes with the Court at the appropriate time.

With respect to Mylan's custodian list, Mylan has represented to Teva that it is conducting additional inquiries into its own proposed custodians as part of the Parties' ongoing discussions. Teva awaits the results of that further investigation in order to assess the adequacy of Mylan's proposed custodian list. Teva anticipates that the Parties will continue to meet and confer, and, if needed, raise any disputes should an impasse be reached on any issues after a fulsome meet and confer.

### 3.    Departmental Files

Mylan's Position

To date, Mylan has identified six departmental files that it proposes to search for responsive documents, and provided descriptions of those files to Teva. Mylan's investigation into the scope of its departmental files remains ongoing.

Similarly, Teva provided Mylan with descriptions of its departmental files that it has agreed to search in this matter. While Mylan appreciates that Teva's search remains ongoing, Mylan remains concerned that Teva has not identified any departmental files related to Teva's Copaxone patent litigation.

We anticipate further disclosure of departmental files will likely be necessary.

Teva's Position

Teva recently received Mylan's proposal to exchange further disclosures of departmental files, and Teva will meet and confer with Mylan on those issues.

Mylan's articulated "concern" regarding Teva's departmental files is misplaced. Teva conducted a reasonable search for departmental files related to Copaxone patent litigation, including interviewing Teva witnesses directly involved in the patent matters, and no relevant departmental files relating to the Copaxone patent litigation have been identified.

### 4.    Coordination with D.N.J. Class Plaintiffs

Teva's and Class Plaintiffs' Position

On January 9, 2023 Teva provided all correspondence exchanged to date with Mylan regarding the negotiation of Teva's custodians and non-custodial ("departmental") sources, as well as any other correspondence pertaining to Teva's intended search terms and/or search

Honorable Jessica S. Allen, U.S.M.J.
January 9, 2023
Page 5

methodology to the Class Plaintiffs. The Parties have agreed to include all Parties in ongoing discovery negotiations. Class Plaintiffs reserve all rights as to these discussions given that they have not been involved in them to date.

<u>Mylan's Position</u>

Mylan reiterates, as ordered by the court, that coordination should only be considered "for discovery purposes to the extent reasonably practicable," and that "such coordination will not be used to delay or otherwise set back the overall schedule in these cases." Coordination Joint Stipulation at 2, ECF No. 104 ("Coordination Order"). Mylan maintains that its case should be tried separately from Class Plaintiffs', as Mylan's case poses different issues than those in *In re: Copaxone* and the recently filed case in the District of Vermont ("BCBSVT Case").[2]

Consistent with the Coordination Order, and to facilitate coordination on discovery, Mylan agrees that Teva can share the parties' correspondence on the issues of custodians and departmental files with Class Plaintiffs' counsel from *In re: Copaxone*. Additionally, Mylan does not object to Class Plaintiffs' inclusion in "all ongoing discovery negotiations", so long as Mylan similarly receives discovery correspondence between Teva and the Class Plaintiffs and is included in all future correspondence and discovery negotiations.

### 5. Related Action in District of Vermont

<u>Mylan's Position</u>

Mylan does not consent to the sharing of the parties' correspondence with plaintiffs in the BCBSVT case, and does not consent to formally coordinating discovery with that case. Notably, that case is in a far different posture than this one: it was only filed on August 22, 2022, the motion to dismiss briefing has just begun, and the court ordered a partial stay of discovery pending the outcome of Teva's recently filed motion to dismiss. *See Blue Cross Blue Shield of Vermont v. Teva Pharmaceutical Industries Ltd.*, No. 5:22-cv-00159 (D. Vt.), ECF No. 52. The existing Coordination Order entered here does not encompass the BCBSVT case, and extending it to include that case risks slowing discovery considerably.

Mylan similarly does not consent to the production of Mylan's Phase 1 discovery to the plaintiffs in the District of Vermont case. First, Teva's request to do so flies in the face of the existing Discovery Confidentiality Order here, which only allows the use of such information "solely for purposes of this Action". Discovery Confidentiality Order ¶ 30. Second, the District of Vermont has not yet entered any Discovery Confidentiality Order in that case, so there would be nothing obligating the plaintiffs there to maintain the confidentiality of Mylan's productions. Third, Mylan has not yet received a subpoena from the BCBSVT plaintiffs, so

---

[2] *See Blue Cross Blue Shield of Vermont v. Teva Pharmaceutical Industries Ltd.*, No. 5:22-cv-00159 (D. Vt.).

Honorable Jessica S. Allen, U.S.M.J.
January 9, 2023
Page 6

production of Mylan's materials is premature in any event. Given these cases are not formally coordinated, Mylan's position is that it would be improper for the Court to order such production.

### Teva's Position

On November 21, 2022, Judge Geoffrey W. Crawford of the U.S. District Court for the District of Vermont denied Teva's motion to transfer the pending case to the District of New Jersey. *Blue Cross and Blue Shield of Vermont, et al. v. Teva Pharmaceutical Industries, Ltd. et al.*, 22-cv-00159, ECF 45 (D. Vt.). On December 27, 2022, Judge Crawford adopted the parties' joint proposal to stay discovery in the Vermont action pending a ruling on the motions to dismiss with the exception that the production of Teva's Phase 1 discovery materials from these coordinated New Jersey actions will be provided in the Vermont action once an appropriate confidentiality order is in place. *Id.* at ECF 52. Teva expects briefing on the motions to dismiss in the Vermont action to be completed by March 17, 2023.

Teva has not yet proposed an agreement and/or stipulation to coordinate discovery across the D.N.J. and D. Vt. cases, but such coordination makes eminently good sense. Despite Mylan's claims, the Vermont action is not in a substantially different posture: in Vermont, as in New Jersey, motions to dismiss are pending, and no discovery beyond Phase 1 is proceeding at this point. Further, for the same reasons that (as the Parties agreed) discovery in the coordinated cases within the District of New Jersey will benefit greatly from coordination, so too coordination between the substantially similar New Jersey and Vermont actions would likewise greatly benefit discovery, including custodial negotiations and depositions scheduling, among other issues. The Vermont plaintiffs have stated they agree, telling Judge Crawford that they "would foresee . . . significant coordination overall on discovery" with the New Jersey actions to "avoid duplication." *Id.* at ECF 46 at 20:20-21:4. And Teva has agreed with the Vermont plaintiffs that, should discovery move beyond Phase 1 in the New Jersey cases while the motions to dismiss are still pending in the Vermont action, Teva will take steps to ensure that discovery in the Vermont action keeps pace with discovery in these coordinated New Jersey cases and that the plaintiffs in the Vermont action are placed in the same position as the New Jersey plaintiffs. To further advance the goals of coordination and efficiency, Teva submits that Mylan's Phase 1 discovery materials should be produced in the Vermont action once a confidentiality order has been entered, just as Teva's Phase 1 materials will be, as those materials are relevant to the Vermont plaintiffs' claims.

Teva would be happy to address these issues with the Court to the extent it would be helpful.

### Class Plaintiffs' Position

Class Plaintiffs are considering these issues, including Mylan and Teva's positions.

Honorable Jessica S. Allen, U.S.M.J.
January 9, 2023
Page 7

### 6. Joint Report on ESI Protocol in Class Actions Submitted on December 9

On December 9, 2022, the Class Plaintiffs and Teva submitted a joint report regarding the sole provision of the Parties' ESI Protocol that remains in dispute. The Parties are prepared to address any questions the Court may have at the next status conference.

### 7. Ongoing Negotiations in Class Actions: Stipulation Regarding Expert Discovery and Stipulation Regarding Privilege Logs

The Class Plaintiffs and Teva continue to negotiate stipulations regarding discovery of expert materials and an agreed approach for preparing privilege logs. To the extent the Parties are unable to resolve any disputes that may arise, we will raise them with the Court at the appropriate time.

### 8. Discussions Not Involving Mylan

To the extent the discussions raised by Teva and the Class Action Plaintiffs are not applicable to or are premature for the Mylan Action, Mylan expressly reserves its rights to address these issues at the appropriate time.

If Your Honor desires, the Parties will be available to address these issues at Your Honor's convenience.

Respectfully submitted,

/s Jakob B. Halpern

Jakob B. Halpern

cc:   Counsel of Record (by ECF)